**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **RICHARD D. EXE and DONA EXE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No:  1:11-cv-70** |
| | ) | |
| **FLEETWOOD RV, INC.,** | ) | |
| | ) | |
| **Defendant,** | ) | |

**OPINION AND ORDER**

Before the Court is an amended motion for extension of time filed by Plaintiffs Richard

and Dona Exe (the "Exes") on November 28, 2011 (Docket # 34), requesting that the Court

extend their deadline for filing final expert reports from November 1, 2011, to January 1, 2012,

and enlarge all other deadlines in the Court's scheduling order by a like sixty days.  Defendant

Fleetwood RV, Inc., filed a response in opposition to the Exes' motion (Docket # 36), and the

Exes timely replied (Docket # 38); therefore, the motion is now fully briefed.

For the following reasons, the Exes' motion for extension will be GRANTED.

*A.  Procedural Background*

The Exes filed this suit against Fleetwood on October 20, 2010, in the Circuit Court of

Brown County, Wisconsin, alleging violations of the Magnuson-Moss Warranty Act in

connection with their purchase of a motion home. (Docket # 1.)  Fleetwood timely removed the

action to the United States District Court for the Eastern District of Wisconsin, and the case was

later transferred here. (Docket # 1, 15.)

 On April 13, 2011, this Court conducted a scheduling conference, establishing the

following deadlines: November 1, 2011, for the Exes' disclosure of experts; November 30, 2011,

for the production of the Exes' experts for deposition; December 31, 2011, for the disclosure of

Fleetwood's experts; and January 31, 2012, for the production of Fleetwood's experts for

deposition, any objections to expert witnesses, and the completion of all discovery. (Docket #

25.)  The Court, however, did not set a dispositive motion deadline or trial date. (Docket # 25.)

     In August 2011, the Exes purportedly disclosed their preliminary expert witness reports

to Fleetwood pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). (Reply Br. 1.)  On

November 9, 2011, the Exes filed a motion to extend the deadlines established at the scheduling

conference by sixty days, including the November 1, 2011, deadline for the filing of their final

expert reports (which at that point had already passed). (Docket # 32.)  The Court denied the

Exes' motion, finding that they failed to show that they had attempted to confer in good faith

with Fleetwood pursuant to Local Rule 37.1(b) before filing the motion. (Docket # 33.)  On

November 28, 2011, the Exes filed the instant amended motion, which is now fully briefed.

(Docket # 34-39.)

### B.  Applicable Legal Standard

     "A motion filed before the deadline may be granted 'for good cause,' a motion made after

the time has expired may be granted only if 'the party failed to act because of excusable

neglect.'" *Murphy v. Eddie Murphy Prods., Inc*., 611 F.3d 322, 324 (7th Cir. 2010) (quoting Fed.

R. Civ. P. 6(b)(1)).  Here, the Exes' motion for extension was filed *after* the November 1, 2011,

deadline for the filing of its final expert reports and, as such, is untimely with respect to that

deadline unless, under Federal Rule of Civil Procedure 6(b)(1)(B), there has been a showing of

both "good cause" and "excusable neglect."[1] *Id.*

The good cause standard focuses on the diligence of the party seeking the extension. *Alioto v. Town of Lisbon*, 651 F.3d 715, 715 (7th Cir. 2011); *Smith v. Howe Military Sch.*, No. 3:96-CV-790RM, 1997 WL 662506, at *1 (N.D. Ind. Oct. 20, 1997). To demonstrate good cause, a party must show that despite its diligence, the time table could not reasonably have been met. *Smith*, 1997 WL 662506, at *1.

Along with good cause, Plaintiff must also make a showing of excusable neglect under Rule 6(b)(1)(B). Excusable neglect is "a somewhat elastic concept," *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 391 (1993), demanding an equitable determination that can "encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 355-56 (7th Cir. 1997) (quoting *Pioneer*, 507 U.S. at 394). In doing so, the Court takes "account of all relevant circumstances surrounding the party's omission . . . includ[ing] . . . the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.*, 646 F.3d 401, 404-05 (7th Cir. 2011) (quoting *Pioneer*, 507 U.S. at 395); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006).

### C.  Analysis

In seeking an extension of the applicable deadlines, the Exes first point out that the

---

[1] Of course, since the Exes filed the instant motion before the January 31, 2012, discovery deadline, it need only establish "good cause" for the extension of that deadline.

Court's scheduling order merely required them to *disclose* experts by November 1, 2011, not file

a final expert report.  In that vein, they emphasize that they fully complied with Federal Rule of

Civil Procedure 26(a)(2)(C)'s requirements to disclose the "subject matter" and "a summary of

facts and opinions on which the witness is expected to testify" through the preliminary expert

reports they purportedly provided to Fleetwood in August 2011.

Nevertheless, the Exes admit that they fully intended to supplement these preliminary

expert reports with final expert reports by the November 1st deadline, but they "simply ran out

of time to sequence [their] discovery needs, reinspect the motor home and prepare the final

reports." (Pl.'s Notice of Mot. and Mot. to Enlarge Time 5.)  More specifically, the Exes report

that they served Fleetwood with discovery requests on April 15, 2011, seeking, among other

things, the electrical schematics, floor engineering drawings, and operator's manual for the

motor home. (*Id*.)  Delayed by the negotiation of a protective order, the Exes did not receive the

schematics and drawings until July 8, 2011; these documents, however, were unusable without a

"key/legend," which Fleetwood provided to them on August 18, 2011. (*Id*. at 6.)  Similarly, the

Exes did not receive the operator's manual from Fleetwood until August 29, 2011. (*Id*.)

The Exes also contend that although it originally noticed the deposition of Fleetwood's

corporate representative for August 22, 2011, in order to accommodate Fleetwood's attorney the

deposition did not take place until September 26, 2011. (*Id*.)  Then, the preparation of the

deposition transcript by the court reporter was delayed, with the Exes receiving it on October 28,

2011. (*Id*.)  As a result, the Exes represent that, despite their diligence, they simply could not

perform the necessary sequence of tasks— obtain the schematics, drawings, and operator's

manual that their expert wanted; conduct the Fleetwood corporate representative's deposition;

4

reinspect the motor home with these documents in hand; and then complete the final expert reports—by the deadlines set at the scheduling conference. (*Id*. at 7.)

Fleetwood disputes the Exes' basis for their request for an extension, nitpicking their version of almost every event. Fleetwood then baldy speculates, utilizing its usual over-heated prose, that the Exes' failure to meet the November 1, 2011, final expert report deadline was "part of a calculated plan that [their] counsel devised to gain some sort of tactical advantage with regard to the expert disclosure process." (Def.'s Resp. 1.) Nevertheless, Fleetwood admits that it did indeed take additional months to produce some of the discovery documents that the Exes requested. (*Id*. at 2.)

Considering all of the foregoing, this obviously is not a case in which the Exes, for example, inexplicably stood by throughout the discovery period while Fleetwood performed all the discovery. *See, e.g.*, *Lackey v. Biomet*, No. 1:09-cv-363, 2011 WL 3101575, at *1 (N.D. Ind. July 25, 2011); *Everett v. Aldi, Inc.*, No. 1:07-cv-275, 2009 WL 940379, at *5 (N.D. Ind. Apr. 6, 2009). Rather, the record indicates that the Exes timely commenced, and pursued, discovery. *See generally Yessenow v. Hudson*, No. 2:08-cv-353, 2011 WL 3667488, at *4 (N.D. Ind. Aug. 22, 2011) ("The court must assess the effort to conduct discovery by the parties' efforts throughout the pendency of litigation . . . ."). Considering that the discovery period consisted of just seven months, that it involved experts, and that no prior extensions to the expert disclosure or discovery deadlines have been granted, the Exes have sufficiently shown why, despite their diligence, they were unable to complete their final expert reports by November 1, 2011, and all discovery by January 31, 2012. Consequently, there is good cause to extend the deadlines set at the scheduling conference.

5

In addition, the Exes have established "excusable neglect" for their failure to meet the November 1st deadline to produce final expert reports.  After all, the Exes' counsel corresponded with Fleetwood's counsel about the final expert report deadline as early as September 27, 2011, anticipating that he might have difficulty meeting the deadline considering the various factors in play at the time. (Reply Br. 2-3.)  Apparently, he was under the misapprehension that Fleetwood's counsel had agreed to extend the deadline, later realizing that he had "missed" the emails from Fleetwood's counsel indicating that it agreed to extend the deadline for fact discovery but not expert disclosures. (Reply Br. 3; Resp. Br. 9, Exs. 3-4, 14); *see Robb*, 122 F.3d at 355-56 (clarifying that "excusable neglect" could "encompass situations in which the failure to comply with a filing deadline is attributable to negligence" (quoting *Pioneer*, 507 U.S. at 394)).

Overall, the length of the delay in this instance was minimal; the Exes completed their reinspection of the motor home on November 9, 2011, and provided Fleetwood with the final expert reports on November 26, 2011. (Reply Br. 9.)  Furthermore, the Exes purportedly had already provided Fleetwood with preliminary expert reports in August 2011 and advised it the following month that they may have difficulty meeting the expert disclosure deadline; thus, any risk of prejudice to Fleetwood was reduced, and virtually non-existent. *See Commodity Futures Trading Comm'n*, 646 F.3d at 404-05.  Moreover, no dispositive motion deadline or trial dates have been set, and the adverse consequences of denying the Exes the use of the final expert reports could be grave. *Id*. ("The stronger the excuse and the graver the adverse consequences of rejecting it relative to the adverse consequences to the opposing party if the excuse is allowed, the more the balance leans toward granting.").  Consequently, the "equitable" standard of

6

"excusable neglect" weighs in favor of granting Exes an extension of the November 1st expert witness disclosure deadline. *Id*.

In sum, because there is both "good cause" and "excusable neglect" to extend the expert disclosure deadline, as well as "good cause" to extend the discovery and other scheduling deadlines, the Court will GRANT the Exes' motion for a sixty-day extension.

### D.  Conclusion

Plaintiffs' amended motion for a sixty-day extension of the scheduling deadlines (Docket # 34) is GRANTED, and the following deadlines are set: January 3, 2012, for the Exes' disclosure of experts; January 31, 2012, for the production of the Exes' experts for deposition; February 29, 2012, for the disclosure of Fleetwood's experts; and March 28, 2012, for the production of Fleetwood's experts for deposition, any objections to expert witnesses, and the completion of all discovery.

SO ORDERED.

Entered this 14th day of December, 2011.

s/Roger B. Cosbey
Magistrate Judge
United States District Court

7