UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

RICHARD D. EXE and DONA EXE,

    Plaintiffs,

    v.

FLEETWOOD RV, INC.,

    Defendant.

Civil Action No. 1:11-CV-70-JVB-RBC

**OPINION AND ORDER**

Plaintiffs, Richard and Dona Exe, are suing under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., on the allegation their Fleetwood Revolution recreational vehicle ("RV") does not conform to its warranty, though Fleetwood has had a reasonable opportunity to repair it. According to the Exes, their Revolution has electrical problems that interfere with its leveling system and slide-outs. (The term "slide-outs" refers to the machine and equipment that can expand the RV's living space when the RV is parked.) Fleetwood has moved to bar the Exes' proposed expert testimony from John Jewell and Tim Wegge regarding the working condition of the RV and its value, respectively. Fleetwood has also filed a motion for summary judgment predicated on its motion to bar expert testimony, arguing the Exes have no admissible evidence of damages.

**A. BACKGROUND**

The Exes bought a 2010 Fleetwood Revolution RV on January 29 of that year. It came with a limited warranty good for 15,000 miles or one year from the date of delivery, whichever would come first.

The Exes believed their Revolution did not conform to its warranty, and turned it over to Fleetwood for repairs in March 2010. Fleetwood returned the RV to the Exes later that month. Fleetwood claims servicing and repairs had been "successfully performed" by then. (Ans. 4.) The Exes contend otherwise, alleging the "full wall and kitchen/galley slide outs as well as . . . the leveling system" are non-conforming as a result of "water intrusion in an electrical compartment" and "corrosion of . . . key ground wire connections." (Compl. 2–3, DE 1-1 at 5–6; Pls.' Resps. to Order of Nov. 13, 2012, DE 90, at 1.)

The Exes intend to rely in part on John Jewell's testimony, some of it in the form of expert opinions, to establish these conditions exist, and ultimately that the Revolution doesn't satisfy its warranty. Jewell has experience repairing heavy equipment, including trucks. He owns and operates a trucking company, and is certified to teach auto mechanics and driving. In connection with his trucking company, he oversees the repair and maintenance of a fleet of about twenty trucks. In the past, he was certified as a master technician by the National Institute for Automotive Service Excellence ("NIASE" / "ASE"). Jewell also spent five years as Maintenance and Safety Engineer for Waste Management, and he holds two patents for dump-truck hydraulics and electronics.

Although Jewell has owned an RV since June 2011, he has never worked for an RV manufacturer, and he has never been hired to repair any part of the living quarters of an RV. (Jewell Dep. 71–72, Feb. 2, 2012, DE 52-1 at 7–8.) Jewell has received no training on RV coach repair, and this is the first case where he has been offered as an expert witness regarding a motor home. (*Id.* at 72.) He has never belonged to any organization that deals with the RV industry, and doesn't know the name of any entity that regulates or provides specifications for it. (*Id.* at 74–75.) Fleetwood argues these facts leave Jewell unqualified to testify as an expert in this case.

In his August 1, 2011, "Preliminary vehicle inspection/report of opinions" (DE 55-1) Jewell relates the following conclusions about the condition of the Exes' RV on November 14, 2010:

- It had a "corroded ground buss bar where multiple connections from multiple circuits were connected."

- "An electrical assembly containing relays and various other electrical components, as well as the assembly's wire harness were not mounted, rather the assembly was left to flop around in a storage compartment under the entrance steps."

- "One of the kitchen circuits, when loaded by turning on the microwave, the built in TV in the front overhead console, and a toaster would trip out the inverter without tripping any circuit breakers in the panel."

- "A rear storage compartment had a considerable amount of water in it."

- "The left slide out failed to extend on two separate occasions, once with Mr. Exe operating it and once with me operating it."

- "The left slide out failed to retract on two separate occasions, again with Mr. Exe and I operating the control."

- "The right (kitchen) slide out [had] considerable damage to what appear[ed] to be a structural member mounted to the bottom of the floor of the motor home."

- "The motor home has had many significant problems, continues to have problems that were presented to repair on multiple occasions and will continue to have serious problems . . . . The future problems will be in addition to what the owners" were experiencing in November 2010.

- "The [November 2010] problems affect[ed] use, value, and possibly safety."

- "The future problems will most certainly affect use."

Three-and-a-half months later, Jewell prepared another report (DE 55-1 at 3–6) recounting the findings he had made upon a re-inspection four days earlier. That report also contains many new expert opinions relating to the "buss bar," leveling system, and slide-outs. Jewell concluded the buss bar was conducting electricity poorly because of rust and corrosion. A

3

ground wire in the buss bar compartment was "jammed tight to the connector" and likely damaged, creating an "extremely dangerous situation that could result in a fire or battery explosion." Jewell reports the hydraulic leveling system was prone to leaking, overfilling, and malfunctioning. He observes that when Richard Exe started the coach in preparation to leave Jewell's shop, "the leveling system activated itself with no warning." Jewell characterizes the self-activation as a "safety use problem." Moving on to the slide-outs, Jewell adopts the statements Richard Exe made to him that the right rear slide-out was prone to "work[ing] itself out" of place," which, according to Jewell, affects the coach's utility, value, and possibly its safety. Jewell adds that the left slide-out was damaging the hot-water lines when it retracted, jamming two "wire looms." He believed that problem was likely to recur, and that further damage to the water line could cause the compartment to flood. Finally, "the rectangular thick wall structural member located next to the slide motor on top of the compartment [for the right front slide-out was] compromised due to one of the walls being torn out."

In summary, the November report states that Jewell's "final opinion" had not changed from his "preliminary opinion" in August: "The motor home has had many significant problems, continues to have problems that were presented for repair on multiple occasions and will continue to have serious, perhaps catastrophic problems in the future." Jewell believed those issues affected "use, value, and safety."

To prove the value of their Revolution in its allegedly non-conforming condition, the Exes will rely on their own testimony and that of Timothy Wegge. Wegge has owned Burlington RV Superstore, a dealership in Wisconsin, for "decades." Rather than challenge his expertise, Fleetwood argues the Court should bar Wegge from testifying because he based his conclusions in part on Jewell's reports and because Wegge did not place a dollar figure on his estimate that

4

the Exes' Revolution was worth just "salvage value." "Although there are price guides in place for R.V.s, he did not rely upon any of these to provide a monetary figure." (DE 52 at 10.)

B. ANALYSIS

1. Motion to Bar Expert Testimony

In general, any witness may testify in the form of an opinion that is "rationally" based on what the witness perceived, rather than knowledge of a specialized field, so long as the opinion is "helpful to clearly understanding [the witness's] testimony or to determining a fact in issue." Fed. R. Evid. 701.

Before a witness can opine from specialized knowledge, however, she must qualify as an expert. Fed. R. Evid. 702. The proponent of the expert must show:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* The subject of the prospective expert opinion must be within the witness's expertise. *E.g.*, *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723–24 (7th Cir. 1999).

The analysis is flexible, and it takes into account the the proffered testimony's subject matter. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 150 (1999) ("[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." (alteration and quotation marks omitted)). Although the prospective expert opinions here are non-scientific in the sense of *Daubert*, "[t]he trial court must use the criteria relevant to [these] particular

5

kind[s] of expertise . . . to 'make certain that [the] expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (quoting *Kumho Tire*, 526 U.S. at 152).

### a. John Jewell

Jewell's background includes relevant specialized knowledge, skills, or experience in hydraulics, electronics, and automotive mechanics. Indeed, he has decades of experience maintaining heavy machinery and trucks, as well as patents in dump-truck hydraulics and electronics. His ASE certification shows he attained competence in automotive service, and some of the underlying principles of that field are generally applicable. Fleetwood's Reply Brief concedes "Mr. Jewell is familiar with electricity . . . . in connection with an automobile." (DE 65-1 at 2.) He therefore has some specialized knowledge that he has applied in examining the Exes' RV, and some of his opinions may prove helpful to the jury.

On the other hand, Jewell's is not qualified to perform service work on RVs. Fleetwood has submitted the affidavit of Thomas Fribley, whom the Recrecational Vehicle Industry Association has certified as a "Master Recreational Vehicle Service Technician," and who has worked in the RV industry for over forty years. (Fribley Aff., DE 94-1, at 1.) Fribley testifies that in his long career in the industry, he never encountered a mere automotive technician who was treated as "having the requisite skill, knowledge or expertise to be a recreational vehicle service technician." (*Id.* at 6.) Plaintiffs proffer no countervailing evidence. The Court therefore infers Jewell lacks the qualifications of an expert in the field of RV maintenance and repair. And necessary premises underlying some of the conclusions Plaintiffs might elicit from him involve RV-specific knowledge. Because Jewell has none, he may not testify in the form of opinions that

6

can't reliably be formed without this knowledge base. *See* Fed. R. Evid. 702; *Kumho Tire*, 526 U.S. at 152 (requiring the "level of intellectual rigor that characterizes the practice of an expert in the relevant field").

The upshot is, Jewell may testify in the form of an expert opinion derived from a basic level of specialized knowledge in the fields of automotive mechanics, hydraulics, and electronics. A lack of experience with RVs in particular is not a bar to the admissibility of opinions Jewell might offer in applying the general principles from these fields. Other areas of his prospective opinion testimony that necessarily involve RV-specific knowledge are inadmissible.

Jewell also has relevant lay testimony to offer. In particular, whether the Exes' Revolution worked well enough to satisfy its warranty is a fact of consequence, and Jewell's first-hand observations during his inspections have some tendency to prove it. *See* Fed. R. Evid. 401 (defining relevance). Fleetwood argues because Richard Exe was there for the tests, too, Jewell's testimony about what he observed would be unnecessarily cumulative. The Court disagrees. Whether the Exes' RV was functioning properly is a central issue for the jurors, and they might well find the observations of a second set of eyes helpful in deciding it. *See* Fed. R. Evid. 403 (permitting the exclusion of cumulative evidence only where it is needlessly so, and only where this problem "substantially" outweighs the evidence's probative value).

The Court so rules having considered Fleetwood's supporting authorities. As Fleetwood contends, there are similarities between this case and *Teerling v. Fleetwood Motor Homes of Indiana, Inc.*, No. 99 C 5926, 2001 WL 641337 (N.D. Ill. June 4, 2001), where the district court excluded the prospective expert testimony of Thomas Walters, an ASE-certified automotive technician, regarding defective conditions on an RV. Neither Jewell nor Walters had prior

7

professional experience with RVs. *Id.* at \*2. What distinguishes Jewell from Walters, however, is his specialized knowledge of the hydraulics and electronics fields, evidenced by the patents he holds. And for the most part, Jewell's prospective opinions are more concrete and more readily traceable to his specialized knowledge. For example, where Jewell is expected to testify the Exes' Revolution had a corroded buss bar, and that components of an electrical assembly were not secured, Walters would have offered only that various RV-specific devices were "defective." *Id.* Jewell bases his testimony on more extensive specialized knowledge, and his opinions are more likely to help the trier of fact. *See Mid-State Fertilizer Co. v. Exch. Nat'l Bank*, 877 F.2d 1333, 1339 ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."), *quoted in Zenith Elec. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419–20 (7th Cir. 2005).

Fleetwood also relies on pages \*3 through \*5 of *Coachmen Industries, Inc. v. Kemlite*, No. 3:06-CV-160, 2002 WL 4858385 (N.D. Ind. Nov. 10, 2008), where the court excluded scientific expert testimony regarding "complex chemical reactions" that had nothing to do with the mechanics of slide-outs or RV leveling systems, and where the party seeking exclusion had no objection to the witness's prospective lay testimony. These differences render *Kemlite* inapposite.

Thus, the Court will deny Fleetwood's motion to bar John Jewell from testifying. To be clear, however, this is not a ruling that Jewell is qualified to offer just any expert opinion related to a Fleetwood Revolution. His expert opinions must be confined to those derived from his basic level of specialized knowledge in automotive mechanics, hydraulics, and electronics.

### b. *Tim Wegge*

The Court declines Fleetwood's invitation to exclude Wegge from testifying because he formed his opinions using Jewell's reports. An expert could rely in part on Jewell's reports to form a valuation opinion, because the reports themselves contain some appropriate expert opinions, as well as unobjectionable lay opinions and simple observations. In any event, opinions are not excludable solely because some of the data the witness relied on are not independently admissible. Fed. R. Evid. 703. Fleetwood has not shown Jewell's reports to be so flawed they could not be used to value an RV reliably.

Fleetwood's other basis for excluding Wegge's testimony is that he did not place a dollar value on his estimate that the Exes' Revolution was worth only "salvage value." While this aspect of Wegge's testimony may relate to whether the Exes' can make a genuine issue of damages, the Federal Rule of Evidence governing expert opinions does not require that all valuations be quoted in units of currency. Fed. R. Evid. 702. Fleetwood has cited no case applying federal evidence law where the court excluded a valuation opinion on the ground that the witness did not state the valuation in terms of a specific number. *See Cunningham v. Masterwear Corp.*, 569 F.3d 673, 676 (7th Cir. 2009) ("[E]videntiary issues that arise in cases litigated in federal courts are governed by the Federal Rules of Evidence."). This feature of Wegge's opinion is not a reason to bar him from testifying.

For these reasons, Fleetwood's Motion to Bar Testimony will be denied as to Tim Wegge, as well.

### 2. Motion for Summary Judgment

A reviewing court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A motion for summary judgment is not an occasion for weighing evidence, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), though "a factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009), *quoted in Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011). So the question is whether the evidence raises any set of reasonable inferences that would enable the nonmoving party to prevail. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") If so, the motion is denied; otherwise, granted. *See id.*

Fleetwood's built its Motion for Summary Judgment on the expectation that Jewell's and Wegge's testimony would be excluded. From there, the Motion argues Mr. Exe himself cannot offer a damages opinion, so the Exes have no admissible evidence of damages. But the underlying assumption about the admissibility of Jewell's and Wegge's testimony turned out to be false, as explained above.

And the Court disagrees with Fleetwood's contention that the Exes have no genuine issue of damages simply because Wegge did not place a dollar figure on "salvage value." "Salvage value" is a meaningful phrase that would assist the jury in calculating damages if it determines Fleetwood is liable. Moreover, as an owner, Mr. Exe may testify to the value of his own property. *Cunningham*, 569 F.3d at 676 ("[T]he federal rules . . . have been interpreted to permit a property owner to testify about the value of his property."). Thus, Fleetwood has failed to show the Exes will have no admissible evidence of damages at trial. Accordingly, the Motion for Summary Judgment will be denied. *See Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) ("On summary judgment . . . a court may not weigh the evidence,

or decide which inferences to draw from the facts." (citing *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

### C. CONCLUSION

Fleetwood's Motion to Bar expert testimony (DE 50) and its Motion for Summary Judgment (DE 74) are **DENIED**.

**SO ORDERED** on February 6, 2013.

  s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE
