UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **RICHARD D. EXE and DONA EXE,** )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**FLEETWOOD RV, INC.,** )<br>)<br>**Defendant.** ) | Case No: 1:11-CV-70 |

## OPINION AND ORDER

On April 8 and 9, 2013, this Court held a evidentiary hearing on Plaintiffs' Motion for Sanctions. (Docket # 135, 136.) During that hearing, Plaintiffs Richard and Dona Exe attempted to introduce an affidavit from John Jewell, their now deceased expert witness, to which Defendant Fleetwood RV, Inc., objected. Likewise, when Fleetwood moved to admit affidavits from Barry Krueckeberg and Douglas Haas, both of whom testified at the hearing, the Exes objected to their admission. As such, the Court kept the record open and instructed the parties to submit further objections to the admission of these affidavits. The parties subsequently filed their objections on April 22, 2013.[1] (Docket # 137, 138.)

For the following reasons, the Exes' objections to the admission of the Krueckeberg and Haas affidavits will be OVERRULED, while Fleetwood's objections to the Jewell affidavit will be SUSTAINED.

*A. Factual and Procedural Background*

In January 2010, Richard and Dona Exe, residents of Wisconsin, purchased a 2010

---

[1] Along with objecting to the admission of the Jewell affidavit, Fleetwood also moved to strike certain portions of Jewell's deposition. (Docket # 138.) That portion of the motion will be addressed in a later ruling.

1

Fleetwood Revolution motor home, which began experiencing intermittent electrical or electronic problems, particularly malfunctioning "slide-outs," some time thereafter. (Compl. ¶¶ 1, 4, 6.) As such, on October 15, 2010, the Exes brought suit against Fleetwood, alleging that it breached the terms of the written warranty provided with the motor home by failing to fix these problems in violation of the Magnuson-Moss Warranty Act and Wisconsin law. (*See* Compl. ¶¶ 6, 11-14.)

The Exes retained John Jewell as an expert witness. (Docket # 81 at 3.) Jewell first examined the motor home in November 2010. (R. Exe Aff. ¶ 6; *see* Jewell Dep. 82.) Some months later, he prepared a preliminary expert report, which was dated August 1, 2011. (Jewell Dep. 83; *see* Docket # 55-1 at 1-2.) Jewell set forth seven observations in this report, including a corroded buss bar and an electrical assembly containing relays and other electrical components that was not mounted and left to flop around in a storage compartment under the entrance steps. (Docket # 55-1 at 1.)

Fleetwood conducted its own inspection of the vehicle on November 9, 2011. (Docket # 73-1 at 4.) Barry Krueckeberg, Fleetwood's legal liaison; Doug Haas, Fleetwood's designated expert; Bruce Terlep, Fleetwood's attorney; and the Exes were present at the inspection. (Docket # 73-1 at 5.) The inspection lasted for several hours and included a test drive of the motor home, at the end of which Haas operated its slide outs and leveling system. (Docket # 73-1 at 9.) Krueckeberg videotaped this test of the slide outs and leveling system. (Docket # 73-1 at 9.)

A few days later, on November 12, 2011, Jewell reinspected the Exes' motor home (Docket # 73-1 at 6), preparing a second expert report four days later (Docket # 55-1 at 3-6). In

this November 2011 report, Jewell noted that it appeared that one of the bolts connecting a circuit to the motor home's buss bar had been recently replaced. (Docket # 55-1 at 5.) During his deposition in February 2012, Jewell testified that he believed the bolt had been changed and further stated, for the first time, that one of the components in the electrical assembly that had previously been flopping around had been secured. (Jewell Dep. 138-39, 207-08.) The Exes maintain that they were the only ones who had possession and control of the motor home, which was stored securely in a storage facility, between Jewell's two inspections. (Docket # 73-1.) As such, they believe that only Fleetwood could have made these changes at the November 9, 2011, inspection. (Docket # 73-1 at 7.)

Accordingly, the Exes brought a motion for sanctions against Fleetwood on July 25, 2012, attaching several affidavits, including one from Jewell dated July 19, 2012. (Docket # 73.) In the motion, the Exes argue that Krueckeberg, Haas, and Terlep conspired to, and actually did, tamper with their motor home during Fleetwood's inspection on November 9, 2011, by securing the "Trimark box" and relays, replacing the bolt, and hiding the videotape of the test drive. (*See* Docket # 73 at 6-13.) Fleetwood vehemently denies these allegations and filed a response in opposition to the motion on August 30, 2012, that included, among numerous other documents, affidavits from Krueckeberg and Haas. (Docket # 81.)

On January 25, 2013, the Court set an evidentiary hearing on the motion for sanctions, limiting the presentation of evidence to the Exes' allegations that Fleetwood switched out a bolt on the motor home's electrical system and secured an electrical relay box during its November 2011 inspection. (Docket # 111.) The Court further deemed the record complete concerning the video taken during the inspection of the leveling mechanism and "air dump" and the purported

3

spoliation of that video. (Docket # 111.)

The evidentiary hearing occurred on April 8 and 9, 2013. (Docket # 135, 136.) The Exes, Krueckeberg, Haas, and Terlep all testified at the hearing. Richard Exe testified that, during Jewell's first inspection in November 2010, he observed Jewell lift up the relays as well as the Trimark box from the compartment under the front steps of the motor home.

Jewell did not testify as he had passed away after the Exes' filed their motion and before the hearing. As such, the Exes attempted to introduce Jewell's deposition as well as his affidavit from July 19, 2012, at the hearing. Fleetwood objected to the admission of certain portions of the deposition and the affidavit as a whole. At the very end of the hearing, Fleetwood also sought to introduce affidavits from Krueckeberg and Haas. Like Fleetwood, the Exes objected to their admission. Consequently, the Court kept the record open and directed the parties to file further objections to the admission of the affidavits, which they subsequently did. (Docket # 137, 138.) Although the Exes now seek to exclude only portions of the Krueckeberg and Haas affidavits, Fleetwood moves to keep out the Jewell affidavit in its entirety.

*B. The Krueckeberg and Haas Affidavits*

In their brief in opposition to the admission of the Krueckeberg and Haas affidavits, the Exes argue that paragraphs 12 through 14 of the Krueckeberg affidavit and paragraphs 14 and 16 through 21 of the Haas affidavit should be excluded because they reference the video and audio depiction of the leveling system and the discharge of air from the suspension system, issues on which the Court had previously closed the record. (Docket # 137 at 1.) They do not object to the admission of the remainder of the affidavits, finding them merely duplicative of Krueckeberg's and Haas's live testimony at the hearing. (Docket # 137 at 1.) As such, those

4

portions of the affidavit will be admitted without further analysis. As to the Exes' efforts to exclude the paragraphs referencing the videotape, leveling system, and "air dump," their sole argument for excluding them is a non-starter.

Although the Court did order the record closed on the videotape, leveling system, and "air dump" issues on January 25, 2013 (Docket # 111), the Krueckeberg and Haas affidavits were already part of the record, having been attached as exhibits to Fleetwood's response to the motion for sanctions and filed on August 30, 2012 (Docket # 81-8 (Affidavit of Douglas Haas filed on August 30, 2012), 81-9 (Affidavit of Barry Krueckeberg filed on August 30, 2012)). Consequently, the paragraphs the Exes seek to exclude as being outside the record are *already part of the record*. Despite Fleetwood pointing this out in its response (Docket # 141 at 2), the Exes do not attempt to offer an alternative basis for excluding these paragraphs in their reply, stating only that they stand on their original brief. (Docket # 142.)

It is not this Court's role to make arguments for a party. *See, e.g.*, *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008) ("It is not the job of this court to develop arguments for [parties]."); *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008) ("[I]t is not the obligation of this Court to research and construct the legal arguments available to parties . . . ."). Accordingly, because the Exes' sole argument for excluding the paragraphs in the Krueckeberg and Haas affidavits referencing the videotape and test run of the leveling system is without merit, their objections are OVERRULED. The Krueckeberg and Haas affidavits are therefore admitted in their entirety.

### C. The Jewell Affidavit

Fleetwood objects to the admission of the Jewell affidavit in its entirety, arguing that it

5

should be wholly excluded from evidence as inadmissible hearsay and that its admission would violate Fleetwood's right to cross examine Jewell. (Docket # 138 at 6.) The Exes contend that the Jewell affidavit—specifically paragraph 2, which describes Jewell's inspection of the Trimark box and relays—falls under the residual exception to the hearsay rule, encompassed in Federal Rule of Evidence 807. (Docket # 140 at 2-4.) As such, the Exes ask the Court to admit the Jewell affidavit and consider the contents of paragraph 2.[2] (Docket # 140 at 6.)

Federal Rule of Evidence 802 prohibits the admission of hearsay statements, FED. R. EVID. 802, defined as out-of-court statements offered into evidence to prove the truth of the matter asserted, *United States v. Hicks*, 635 F.3d 1063, 1068 (7th Cir. 2011) (citing FED. R. EVID. 801(c)). "[H]earsay is presumptively inadmissible and the burden is on the party seeking admission to overcome that presumption." *Rosenbaum v. Freight, Lime & Sand Hauling, Inc.*, No. 2:10-CV-287, 2013 WL 785481, at *2 (N.D. Ind. Mar. 1, 2013) (citation omitted).

Paragraph 2 of the Jewell affidavit, made out of court and offered to prove the truth of the matters asserted in it, is undoubtedly hearsay. As such, in order to be admissible, the paragraph must fall under an exception to the hearsay rule as set forth in Federal Rules of Evidence 803, 804, and 807. Rule 803's exceptions apply regardless of whether the declarant is available as a witness, while Rule 804's exceptions apply only when the declarant is unavailable. FED. R. EVID. 803, 804. Rule 807 is the residual exception. FED. R. EVID. 807.

Here, although Jewell, having died before the evidentiary hearing, is unquestionably an unavailable witness, FED. R. EVID. 804(a)(4), the Exes do not argue that paragraph 2 falls under

---

[2] Because the Exes apparently only seek to have paragraph 2 of the Jewell affidavit admitted, the Court limits its analysis to the statements in that paragraph.

any of Rule 804's exceptions. And indeed, such an argument would be unsuccessful.[3] Rather, the Exes maintain that paragraph 2 of the Jewell affidavit falls under Rule 807's residual exception.

Rule 807 allows hearsay evidence not admissible under any other hearsay exception to be admitted in certain circumstances. *Chicago Dist. Council of Carpenters Pension Fund v. Wauconda Roofing Co.*, No. 01 C 8025, 2003 WL 21209849, at *2 (N.D. Ill. May 21, 2003). The Seventh Circuit Court of Appeals has construed this "residual exception narrowly to prevent it from becoming 'the exception that swallows the hearsay rule.'" *Id.* at *3 (quoting *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998) (citation omitted)). At the same time, however, trial courts have considerable discretion in deciding whether a hearsay statement falls into this exception. *Id.* (citing *United States v. Hall*, 165 F.3d 1095, 1110 (7th Cir. 1999)).

To be admissible under the residual exception, the statement must meet the following five requirements: (1) circumstantial guarantees of trustworthiness; (2) materiality, meaning it is offered as evidence of a material fact; (3) probative value, such that it is more probative on the point for which it is offered than any other evidence the proponent can reasonably obtain; (4) the interests of justice, meaning that its admission will best serve the purposes of the rules of evidence and the interests of justice; and (5) notice—the adverse party must be given reasonable notice of the intent to offer the statement and its particulars so that the party has a fair opportunity to meet it. FED. R. EVID. 807; *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 631

---

[3] Rule 804 provides for exceptions to the hearsay rule when the unavailable declarant has given former testimony at a trial, hearing, or deposition that is now being offered against a party who had an opportunity and similar motive to cross examine the declarant; when the declarant, while believing his death to be imminent, makes the statement about the cause or circumstances of his death; when the declarant makes the statement against his own proprietary or pecuniary interest; when the declarant makes a statement of personal or family history; and when the declarant's statement is offered against a party that wrongfully caused his unavailability. FED. R. EVID. 804(b). None of these exceptions are applicable to Jewell's statements in paragraph 2 of his affidavit.

(7th Cir. 2006) (quoting *Hall*, 165 F.3d at 1110). As the Seventh Circuit has noted, Rule 807 is not a firmly rooted exception to the hearsay rule and, thus, "only hearsay testimony containing particularized guarantees of trustworthiness as shown by the circumstances in which the statements were made may constitutionally be admitted under this Rule." *United States v. Ochoa*, 229 F.3d 631, 638-39 (7th Cir. 2000) (citations omitted); *see also United States v. Burge*, 711 F.3d 803, 814 (7th Cir. 2013) ("[H]earsay testimony that does not fall under any exception may still be excluded under Rule 807 unless there are substantial indications of its reliability."); *Hall*, 165 F.3d at 1110 ("Critical to the admission of a hearsay statement under 803(24) [now 807] is a finding by the district court that the statement is trustworthy." (citations omitted)).

Although Fleetwood contends that the Jewell affidavit does not meet the first, third, and fifth requirements of Rule 807, it focuses primarily on the first, arguing that the Jewell affidavit contradicts and is at least inconsistent with his sworn deposition testimony because Jewell never mentioned the Trimark box during his deposition. (Docket # 143 at 1-2.) The Exes maintain that Jewell's statements in paragraph 2 of his affidavit were meant to clarify that the electrical assembly, containing *both* the Trimark box and the relays, was not secured when he first viewed it. (Docket # 140 at 3-4.)

In determining whether a hearsay statement has sufficient guarantees of trustworthiness—the first criterion—the Seventh Circuit has set forth the following non-exhaustive factors for courts to consider:

> (1) the probable motivation of the declarant; (2) the circumstances under which the statement was made; (3) the knowledge and qualifications of the declarant; (4) the character of the declarant for truthfulness and honesty and the availability of evidence on the issue; (5) whether the testimony was made under oath and subject to cross-examination; (6) the declarant's personal knowledge of the facts in the statement; (7) whether the witness ever recanted the testimony; and (8) whether the

statement was corroborated.

*United States v. Santos*, 65 F. Supp. 2d 802, 823-24 (N.D. Ill. 1999) (citing *Hall*, 165 F.3d at 1110-11 (citations omitted)). Additionally, courts "also may appropriately consider, when exercising [their] informed discretion concerning admissibility, any other circumstances concerning the statement; no particular criterion is a necessary prerequisite." *Stolarczyk ex re. Estate of Stolarczyk v. Senator Int'l Freight Forwarding, LLC*, 376 F. Supp. 2d 834, 841 (N.D. Ill. 2005) (citing *Hall*, 165 F.3d at 1111).

The first factor the Seventh Circuit has set forth in determining whether a statement has circumstantial guarantees of trustworthiness is the declarant's probable motivation. Here, when Jewell gave his preliminary expert report in August 2011, he made no mention of the Trimark box specifically, stating only that "[a]n electrical assembly containing relays and various other electrical components, as well as the assembly's wire harness were not mounted, rather the assembly was left to flop around in a storage compartment under the entrance steps." (Docket # 55-1 at 2.) His report following his second inspection in November 2011 makes no mention of the electrical assembly, relays, or Trimark box. (*See* Docket # 55-1 at 4-6.) Then, at his deposition in February 2012, when asked about the electrical assembly that was unsecured during his first inspection, Jewell stated, for the first time, that "[o]ne of the components that was flopping around in there was anchored down on [his] second inspection." (Jewell Dep. 208.) During the rest of the seven hour deposition, Jewell does not provide any further specifics. Yet, when the Exes filed a motion for sanctions five months later, Jewell became much more specific, indicating in his affidavit attached to that motion that the *Trimark box* had been unsecured during his first inspection and then secured during his second inspection. (Jewell Aff. ¶ 2.)

9

But "[p]recedent teaches that courts typically should not admit documents made in anticipation of ligation as they 'lack sufficient guarantees of trustworthiness to be excepted from the hearsay rule.'" *Stolarczyk*, 376 F. Supp. 2d at 841 (quoting *Moffett v. McCauley*, 724 F.2d 581, 584 n.1 (7th Cir. 1984) (citation omitted)). In this case, it was not until the Exes filed their motion for sanctions that Jewell provided any specifics on the changes he observed with the electrical assembly. At his deposition, which was closer in time to both inspections—and yet still almost fifteen months from his first inspection—he simply stated that "*one* of the components" in the electrical assembly had been "anchored down" on his second inspection. (Jewell Dep. 208 (emphasis added).) And Jewell does not even mention this purported change in his second expert report, issued only four days after he reinspected the motor home. (Docket # 55-1 at 4-6.) His statements are favorable to the Exes alone, and the fact that they corroborate Richard Exe's own statements would give Jewell, as their expert, substantial motivation to suddenly remember specifics, or embellish the things he did remember, to support and lay out the Exes' litigation position regarding their motion for sanctions. *See Stolarczyk*, 376 F. Supp. 2d at 841.

This segues into the second trustworthiness factor—the circumstances under which the statement was made. As already noted, Jewell's statements in paragraph 2 of his affidavit were made in anticipation of litigation and, having been signed just six days before the motion for sanctions was filed, apparently to accompany that motion. Beyond this, more circumstances exist casting doubt on the trustworthiness of the statements, particularly the amount of time that passed between Jewell's inspections and his affidavit. Jewell first inspected the Exes' motor home in November 2010; he reinspected the vehicle a year later in November 2011. But Jewell

did not specifically mention the Trimark box being unsecured and then secured until July 2012, twenty months after the first inspection and eight months after the second inspection, despite being deposed for over seven hours in February 2012 (*see* Jewell Dep. 1).  And even though the Exes argue that paragraph 2 of the Jewell affidavit only clarifies what Jewell saw at the first and second inspection, this significant passage of time, not to mention Jewell's failure to offer such specifics in the interim, weighs against the trustworthiness of his statements.  *See United States v. Mikos*, No. 02 CR 137-1, 2004 WL 1631675, at *8 (N.D. Ill. July 16, 2004) (noting that the passage of *only a few days* between statements and the event about which the statements were made weighed against the trustworthiness of the statements); *cf. United States v. Vretta*, 790 F.2d 651, 659 (7th Cir. 1986) (noting that "[t]he close proximity in time between the statement repeating the threat and the threat itself lends support to the statements' trustworthiness").

Regarding Jewell's knowledge and qualifications, most of Jewell's statements in paragraph 2 merely recount what he purportedly observed during the inspections and do not, therefore, enter into the realm of expert testimony.  *See Duncan v. Fleetwood Motor Homes of Ind., Inc.*, No. 1:06-CV-42, 2008 WL 2413170, at *2 (N.D. Ind. June 12, 2008) ("[U]nder Rule 701, a lay person may offer opinion testimony providing the witness testifies to what he or she has perceived firsthand." (citations and internal quotation marks omitted)).  And because Jewell performed the two inspections himself, he has personal knowledge of what he observed.

At the same time, however, Jewell also states in paragraph 2, "It is my opinion, held to a reasonable degree of certainty for one in my field of motor vehicle mechanics, that someone had secured this Tri[m]ark box between November 14, 2010[,] and November 12, 2011."  (Jewell Aff. ¶ 2.)  This statement verges on expert testimony and opines as to something that

Jewell did not personally observe—the purported securing of the Trimark box. As such, these two factors—the declarant's knowledge and qualifications and personal knowledge of the facts in the statement—appear to cut both for and against the statements' admissibility.

Yet another factor to consider is the declarant's character for truthfulness and honesty and the availability of evidence on this issue. But, despite bearing the burden of overcoming the presumption that hearsay is inadmissible, *Rosenbaum*, 2013 WL 785481, at *2, the Exes present no evidence concerning Jewell's character for truthfulness and honesty. As such, this factor is no help to the Exes in overcoming that presumption.

Ultimately, however, one of the biggest hurdles in the path of admitting the statements in paragraph 2 of the Jewell affidavit is the fact that, although the statements were made under oath, they were not subject to cross examination. The Exes contend that Fleetwood *did* have the opportunity to cross examine Jewell on these statements during his seven and a half hour deposition in which he testified that one of the components of the electrical assembly that had previously been flopping around was anchored down during the second inspection. (Docket # 140 at 3.) But Jewell never provided the level of specification in his preliminary expert report or deposition that he did in his affidavit. And, as such, Fleetwood did not have the chance to test his memory as to the specifics he later provided, some twenty months after the first inspection. That Jewell was never subject to cross examination by *anyone* concerning these statements mitigates heavily in favor of excluding paragraph 2 of his affidavit.

On the other hand, the last two factors provide some support for admitting paragraph 2 of the Jewell affidavit. Jewell never recanted his statements in paragraph 2 before his death, and the statements ultimately are corroborated by Richard Exe's testimony that he saw Jewell

12

remove the Trimark box and relay compartments during the first inspection in November 2010.

In the end, however, although there are a few factors that support admitting paragraph 2 of the Jewell affidavit—the statement was made under oath, Jewell never recanted his testimony, and Richard Exe's testimony corroborates Jewell's statement—there are also substantial factors weighing *against* admissibility—Jewell first provided the specifics in paragraph 2 of the affidavit months after his inspections of the motor home, the affidavit was prepared in anticipation of the Exes' motion for sanctions, and Jewell was never subject to cross examination on his statements. *Stolarczyk*, 376 F. Supp. 2d at 842. Under these circumstances, "the ordinary presumption in Seventh Circuit precedent against admission of hearsay statements under the residual exception controls." *Id.* In other words, the Exes have "failed to rebut the applicable presumption of inadmissibility." *Id.*

The Court is mindful of the fact that Jewell has passed away and that, as such, he is unable to testify as to the statements in his affidavit. And, although Jewell's affidavit does corroborate Richard Exe's testimony regarding the unsecured Trimark box, "a witness's death is not enough to justify discarding the trustworthiness requirement of the residual hearsay exception." *Id.* (citing *N.L.R.B. v. United Sanitation Serv.*, 737 F.2d 936, 940 (11th Cir. 1984) (reversing ALJ's decision to admit dead witness's self-serving affidavit because no "clear basis of trustworthiness" found)).

Furthermore, briefly touching on the probative value of paragraph 2, *see* FED. R EVID. 807(a)(2), the Exes argue that, because Jewell is deceased and Richard Exe already testified as to what he saw, the Jewell affidavit contains the *only* way to clarify what Jewell did, and the Exes saw, at the November 2010 inspection. But, albeit unclear, the Exes can still advance Jewell's

deposition testimony, which was cross examined, regarding the previously unsecured component of the electrical assembly that had been anchored down at the second inspection, as well as his preliminary expert report, which notes that an electrical assembly was unmounted and flopping around. This testimony, which *is* admissible, seeks to corroborate Richard Exe's testimony, though not as strongly, perhaps, as paragraph 2 of the Jewell affidavit.

Ultimately, the statements in paragraph 2 are hearsay, and the clarification that they purportedly provide does not alleviate the Court's substantial concerns regarding the trustworthiness of these statements or overcome the presumption against their admission. Accordingly, Fleetwood's objections to the admission of the Jewell affidavit are SUSTAINED, and the Jewell affidavit is thus excluded in its entirety.

### *D. Conclusion*

For the foregoing reasons, Plaintiffs' objections to the admission of the Krueckeberg and Haas affidavits (Docket # 137) are OVERRULED, while Defendant's objections to the Jewell affidavit (Docket # 138) are SUSTAINED. Therefore, the Krueckeberg and Haas affidavits are ADMITTED in their entirety, but the Jewell affidavit is entirely EXCLUDED.

SO ORDERED.

Enter for this 14th day of May, 2013.

/S/ Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge